IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEITH A. RAKES, #299323         * | |
| Plaintiff, | |
| v.                              * | CIVIL ACTION NO. DKC-07-362 |
| WARDEN                          * | |
| Defendant. | |
| ***                             | |

**MEMORANDUM**

I. Procedural History

On February 9, 2007, this court received a letter from Roxbury Correctional Institution ("RCI") inmate Keith A. Rakes ("Rakes") complaining that on February 5, 2007, prison officials placed him in a recreation cage with a known enemy and gang member, resulting in a "vicious" assault and the need for medical attention. Paper No. 1. Rakes claims that: (1) his assailant was able to get a weapon past correctional officers and officials "walked away to let this happen;" (2) both RCI and his assigned housing area contain numerous members of the same gang; and (3) there is inadequate monitoring and correctional officers and food service workers are influenced by the gang members, thus placing him at risk for food tampering. *Id*. at 1. Rakes asks for emergency injunctive relief before he is "assaulted any further or killed." *Id*. at 2.

The letter was construed and instituted as a 42 U.S.C. § 1983 civil rights action for injunctive relief. On February 9, 2007, Principal Counsel for the Office of the Attorney General ("OAG") Correctional Litigation Division was ordered to file a show cause response to Rakes's concerns regarding his current safety. Paper No. 2. Rakes was directed to file a formal § 1983 complaint along with an indigency application or the $350.00 civil filing fee. *Id*.

The OAG's Answer was filed on February 23, 2007.[1]  Paper No. 4.  Although provided with and directed to file a 42 U.S.C. § 1983 complaint form and indigency application, Rakes has not filed said documents.  Instead, he continued to file the aforementioned letters, along with a Response to the OAG's Answer.  Paper No. 6.  The request for injunctive relief may be determined on the pleadings.  *See* Local Rule 105.6. (D. Md. 2004).

## II.  Standard of Review

Where, as here, an inmate is seeking injunctive relief in conjunction with his Eighth Amendment claim, relief may only be granted if the inmate can demonstrate: (i) the likelihood he will be irreparably harmed if emergency relief is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that the inmate will succeed on the merits; and (iv) the public interest will be served if the injunction is granted.  *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).

## III.  Analysis

Based upon a review of the materials provided this court, injunctive relief shall be denied.[2]  According to the Declaration of Lt. Mark Gonzalez, Rakes is a member of the gang Dead Man Inc. ("DMI") and at the time of the February 5, 2007 incident was on administrative segregation pending an infraction for engaging in disruptive activities, acts of violence towards staff, engaging in threatening language, and showing disrespect for staff.  Paper No. 4 at Gonzalez Decl.  The

---

[1] Prior to the filing of the OAG Response, Rakes filed another letter with the court indicating that he was being moved to another tier in the RCI segregation unit because of alleged food tampering.  Paper No. 3.  He seemingly claims that while he was moved, inmates from the same housing unit are still feeding him and he is not eating any food that is not sealed.  *Id*.  In addition, on February 28, 2007, the court received for filing letters from Rakes dated February 18 and February 23, 2007.  Paper No. 5.  He claims that he was never interviewed by RCI staff, but also acknowledges that he was spoken to by RCI Lt. Rodriguez and was moved to another housing unit tier after voicing his concerns about inmate placing items, including human feces and urine, in his food.  *Id*.

[2] Rakes has never identified specifically the type of injunctive relief he seeks.

2

infraction relates to an incident involving Rakes and four other member of DMI who allegedly surrounded and threatened a staff member.[3] *Id*. Lt. Gonzalez affirms that : (1) Rakes never stated any fear of fellow DMI members to staff; (2) Rakes had no RCI inmates listed on his OBSCIS enemies' list; and (3) although Rakes indicated that he had tried to leave DMI at another institution, he never advised RCI staff of problems or altercations arising out of these actions.[4] Paper No. 4 at Gonzalez Decl.

Lt. Gonzalez acknowledges that on February 5, 2007, Rakes and a member of DMI , Steven Smith, were placed in a segregation exercise area. *Id*. He states that Rakes made no statements to staff concerning Smith and that while officers assigned to the area were removing another inmate from the exercise area, a fight broke out between Rakes and Smith. *Id*. Gonzalez maintains that no officers witnessed the actual altercation, but upon returning to the end of the exercise area, one officer noticed a cut above Rakes's eye and abrasions on Smith's hands. *Id*. Rakes was taken to the medical department for treatment. *Id*.

Gonzales states that at the time of Rakes's letter complaint, inmates housed on segregation were fed by segregation workers assigned to conduct feed-up, per prison directives. *Id*. This

---

[3] Rakes claims that he was found not guilty of all rule infractions and asserts that he is not a member of any gang and does not participate in gang activities. Paper No. 6 at Attachments.

[4] In his response, Rakes asks that the gang task coordinator at RCI, Lt. Dickens, be ordered to provide a declaration regarding a prior threat to Rakes's life by members of DMI and the Black Gorilla Family ("BGF") and assignment to administrative segregation in May of 2006. He claims that Lt. Dickens failed to place unidentified gang members on his enemies list. Paper No. 6. Rakes states that officials had "prior knowledge of known enemies to plaintiff before his transfer to the facility...." *Id*. These allegations were not previously raised. Rakes also asserts for the first time that: (1) he has numerous enemies that are housed in the segregation and population units at RCI and (2) these enemies are food service workers and are being housed on the same tier where he is housed. *Id*. Rakes states that even though "officials became aware of food tampering and assault to the plaintiff, he was moved to the housing wing next to the wing where the food poisoning and assault occurred, and he continues to be fed by inmates that are his enemies in the same building." *Id*. He claims that one officer cannot adequately watch several inmates who distribute the food to segregation cells and he is still eating only sealed food items at RCI and is being forced to daily pick through his food to prevent food poisoning and contamination. *Id*.

involves the officer assigned to the tier opening up the feed-up slots and observing the inmates as they distribute the meals. *Id*. Lt. Gonzales states that Rakes was refusing his tray on his belief that one of the workers was tampering with his tray or allowing other inmates in the cells near his cell to place "stuff" on the tray prior to being placed in his cell. *Id*. As a result, Lt. Gonzalez immediately moved Rakes to another tier in the segregation housing unit and directed his officer to insure diligence when observing the feed-up process. *Id*.

The materials show that Rakes is being protected at RCI while being housed on segregation. He has been moved to another tier in deference to his safety concerns. Although he voices fears and belief that his food is being tampered with, asserts for the first time that his enemies are scattered throughout RCI general population and segregation, and claims that these enemies are serving his food trays, he neither points to any incidents of food tampering nor identifies these enemies with any particularity. The court therefore finds that injunctive relief is not warranted.

With regard to the cause of action, the court observes that Rakes was directed to file a § 1983 complaint and the $350.00 filing fee or indigency application.[5] The filing of a formal complaint and indigency application would have provided this court the names of proper party defendants, a history of Rakes's administrative remedy filings, a complete statement of facts, and the exact nature of the relief sought by Rakes. In addition, receipt of the filing fee or indigency application would have served to determine filing fee and services issues under 28 U.S.C. § 1915 and Fed. R. Civ. P. 4. Rakes did not file these material and in light of his failure to comply with court order, the case shall be dismissed without prejudice.

IV. Conclusion

---

[5] The court's order to show cause and § 1983/indigency forms were provided to Rakes by the Clerk. There is no indication that Rakes did not receive the forms.

For the aforementioned reasons, Rakes's injunctive relief request shall be denied. The cause of action shall be dismissed without prejudice. A separate Order follows.


Dated: March 29, 2007.                              /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge